Good morning, and may it please the Court. Zach Hudson on behalf of Mr. Pasquale. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Thank you. This Court is asked to review many difficult immigration cases, but this is not one of them. The authority of the Board of Immigration Appeals is constrained by its own regulations to deciding, quote, questions before it. At no point in time did any party involved in this case, not the government and not Mr. Pasquale, ask the Board to decide whether or not his original cancellation determination should be reweighed in light of his post-cancellation convictions. Yeah, but the definition of questions before it may be narrow and may be broad. You've got a narrow definition. Why can't we have, or why can't the Board have a broad definition, the question before it being, should there be cancellation of removal? Yes, Your Honor, well, two reasons. First, in our view, the plain text of the regulations requires giving questions before it some meaning. And of course, as you say, there are a narrow view and a broad view, but the broad view endorsed by the government isn't required by the regulations in any way. Well, how about is it forbidden by the regulations? I don't think it's. You need to convince me of that. Right. Your Honor, I don't think it's squarely foreclosed by the regulations, but at best, the regulations are ambiguous. And as a result of that ambiguity, to the extent it's not clear and we think it's clear, but to the extent it's not clear, because of the severe due process implications of allowing the Board to address any question at any time, this Court would be justified in applying the canon of constitutional avoidance to interpret the regulations. This Court has done so in many cases to constrain Board authority when it implicated serious constitutional questions. And here it clearly would. If the Board could just. How do you square your theory with the Board's reopening a case? Your Honor, we view the. If your theory is correct, the Board has no sui sponte power to reopen a case, true? No, Your Honor, that's not correct. There are two different regulations implicated by your question. The first is the one that we're focused on, which is 1003.1D1, which defines the powers of the authority and says those powers are limited to questions before it. Now, and it's brief in this Court, but never below, and the Board certainly didn't rely on it. The government points to section 1003.2A, which talks about the Board's authority to sui sponte reopen and remand a final order of the Board. So here, there was no order of the Board for the Board to sui sponte reopen and remand with respect to a cancellation order regarding Mr. Pasquale's post-cancellation convictions. So it would be completely consistent with the regulations to say that the Board is limited to questions before it in the kind of normal process where a case goes from the immigration judge to the Board, but that once the Board has issued a final decision on a case on the questions before it, it could later then exercise its sui sponte authority to reopen that case. And that would be completely consistent with the regulations and also consistent with what the Constitution requires under the Due Process Clause. What about further down in that same regulation that you're talking about, the 1003, it then goes on to talk about the ability to remand as appropriate for fact-finding. How does that figure into your analysis? Yes, Your Honor. The government points to a number of provisions in 1003.1d.3, I think Roman at two and Roman at four. Roman at four, which you're referring to, talks to the ability, speaks to the ability to remand for further factual determinations. But it has to be limited to questions that are already before the Board. So an example would be, imagine that this case went straight through on cancellation and the case got before the Board and the Board said, perhaps Judge Richardson got this right, perhaps he got it wrong. There's some factual ambiguity about some of these convictions, so we're going to send this case back to the immigration judge for further analysis on that score. That's how to give effects to Roman at four, consistent with 1003.1d.1. And then the other provisions that precede that, the government also points to the standard of review provisions, the provision that says the Board may review questions of law, discretion, and judgment de novo. But of course, that's limited to questions before the Board, it just speaks to the standard of review. And if you don't believe me, all you have to do is look at the provision directly before that, which says that the Board reviews questions of fact for clear error. So quite clearly, those provisions aren't meant in any way to be in conflict with the questions before it language in the earlier provision. And all they're doing is saying what standard of review should apply to the questions before the Board. It's really, I really don't think it's that complicated. The government's kind of muddied the waters by pointing to these other regulations. But if you believe the government, what that means is the questions before it language means nothing. The Board can address any question at once at any point in time. No party has to preserve anything. No one can forfeit anything. And the Board can decide we're just going to address this issue. And I think maybe. But let me ask you, they should say can address any question at any time. Your basic argument, I think, is a waiver argument. If you take the analogy to Article III courts rather than administrative agency, waiver is a pretty discretionary doctrine. We will occasionally excuse people from waiver where it seems that there'd been no serious prejudice to the presentation of the question and so on. Why isn't it within the discretion of the Board to decide whether something has been waived so long as a substantial unfairness in violation of due process is not worked? Your Honor, the first answer to your question, and I don't mean to sound like a broken record, but I think the regulations here really do play an important part, which is that the Board can only answer questions before it. And the Board itself can't put questions before the Board. The parties to the proceeding have to do that. I think in the circumstances of this case, it does not strike me as an undue expansion of the notion questioned before it. They're trying to figure out if this guy should get cancellation or removal. He is convicted of crimes during the pendency of his deportation or removal proceedings. Our law is unclear as to whether or not one or more of those crimes may be an aggravated felony. So the remand for determination on aggravated felony. The law becomes clear, is now clear, at least to two out of the three members of the Board, that it's not an aggravated felony. But the question remains, on any sort of fair-minded view of the case as a whole, whether or not cancellation or removal is appropriate. And the previous decision as to cancellation or removal was made without knowledge of, or at least without taking into consideration, these subsequent convictions. I don't see that this is unfair. Your Honor, I do think it's unfair for a number of reasons, but first let me address your forfeiture question, because it's really the flip side of the questions before it. If the government had preserved the argument that Mr. Pasquale's original cancellation should be reweighed in light of his post-cancellation convictions at all relevant points in the proceeding, then there would be no questions before a problem. The question would squarely be before the Board. And the government had multiple opportunities at which to raise that issue. And the first was when it sought remand from its original appeal to the Board on the original cancellation order. There it said this new theft conviction, this new post-cancellation theft conviction is an aggravated felony, so Mr. Pasquale is ineligible for cancellation, not that there should be a reweight, that he's ineligible. At that point in time, what the government should have done, and what the government would do in any Article III case, is also say, but in the alternative, because of this new conviction, the Court should reexamine the original cancellation determination. So that would be the standard in any Article III proceeding if the government had lost on an issue below and some new issue got injected into the case, it wouldn't put all of its eggs in one particular basket. It would say either we went on X or we went on Y. But here we would retain the authority to sui spate, raise any issue pertaining to the case that we chose, whether it's jurisdictional or otherwise. That's right, Your Honor. So what's the difference, if you're going to analogize to Article III? Well, I mean, again, there are kind of two distinct arguments here. The main difference that favors us is that this Court is not limited by law or regulation to addressing only the questions before it. So this Court needn't be concerned about some implications about how it construes that provision in this case for some Article III case. But the Article III point is really more of a different reason for the forfeiture reason. So it's, again, there are kind of two separate arguments that are inextricably intertwined but distinct. One is that the Board exceeded its power by addressing questions not before it, which is distinct from the argument that the government forfeited the argument by never raising it. And that's where the Article III analogy comes into play. And we think that the forfeiture jurisprudence in this Court and other courts would squarely favor our interpretation of the law. And so this Court has recognized. The reason it probably wouldn't is that on those issues we often retain the discretion to determine whether or not to consider the issues. So the Article III analogy actually would weigh against you, it seems to me, given the broad discretion we have in cases of whether something is waived, for example. We can still decide that we'll consider it. So let me just follow up on your waiver or forfeiture, I guess, more accurately called. When do you think you can point to where the government actually basically leaves alone this allegation that he's eligible for cancellation and removal? And what do we look to in the record to support your claim that by some action, conduct, or piece of paper, the government actually did such a forfeiture? I would point, Your Honor, to the administrative record, pages 74 to 83, where the immigration judge. Now, that was bound up with a discussion of what the scope of the remand was from the Board. But at that point in time, the government could have easily said, it's ambiguous as to what the scope of this remand is. It could be just to consider whether the theft conviction is an aggravated felony, but it also could be to consider all other things that might be implicated by the remand as this Court held in Fernandez and as the Board had prior held in Patel. So that's really when the government gave up the issue at that point in time. But then it also gave it up again when the issue went back to the Board. When it was before the immigration judge, it didn't press it, and then it didn't press it to the Board. The government pleads in the alternative in cases that run the gamut, agency cases, criminal cases. There's no reason the government shouldn't have to plead in the alternative here. And they don't. It's usually not required necessarily to plead in the alternative. So I guess what I'm trying to figure out is they certainly could have done that, and then I guess we wouldn't be here, but they didn't do it. What makes them required to do it? What law, case, regulation, in your view? So, again, part of the answer is what the Board is permitted to do. So if the government doesn't plead in the alternative, then the question never gets before the Board and the Board can't address it under the Board's own regulation. Another part of the answer is this Court has held in cases like Adibe that people like Mr. Pasquale can forfeit arguments. So if Mr. Pasquale can forfeit an argument, it's not clear to me what supports the notion that the government can't, that who can forfeit turns on what side of the V you're on. Well, it does. Actually, it sadly takes the case of equitable estoppel nearly impossible to win against the government. You know, so, I mean, the rules are tilted, there's no doubt, in all kinds of contexts. So the argument you make makes sense, it's an equitable one, but we're faced all the time with situations where, honestly, because of the way the laws develop, the government gets an upper edge, you know, for example, in forfeiture, equitable estoppel, and other areas. So apart from an equitable argument, is there a case or something else that you think best supports your argument? I mean, the best line of cases for argument, again, comes back to what the Board is talking about, the gray line tours, which talks about agencies can only do what their regulations allow them to do. Those are the cases that really would constrain what the government's trying to do here. And again, that doesn't, in and of itself, support a forfeiture argument, but it does mean that if the government does not press the issue, which is the equivalent of forfeiture, the issue cannot be appropriately before the Board. So there are really kind of two ways for us to win this case, actually.  One, because the government can't forfeit and did forfeit its arguments here, or because the government can't ever forfeit any argument, but it has to preserve arguments such that the questions are, in fact, before the Board. And importantly, the Court can decide the regulatory interpretation issue either on the plain text of the regulation, which we think strongly favors us, but to the extent that it's ambiguous, there are numerous canons of construction that counsel in favor of a law. Well, you know, if we're talking about an ambiguous regulation, I think the agency gets our deference, our, meaning the case name. How do you respond to that? Well, Your Honor, if you're saying that Justice Scalia does not like our deference, but under the current state of the law, the agency gets deference in the interpretation of its own regulations. That is true, Your Honor. In setting Justice Scalia's complaints aside, this Court has held that the canon of constitutional avoidance trumps Chevron deference and other deference agency regulations. So if this Court believes that there is, in fact, a due process problem, and we think that the due process problem in this case is a fortiori under Campo, Sanchez, and Singh, then there wouldn't be any deference to the agency here. And, of course, the government hasn't asked for deference to its interpretation. It's just said there's really nothing to see here. So if the government now stands up and tries to argue some sort of Chevron deference issue, there might be a Chenery problem, but that would be an issue for us to talk about perhaps during my rebuttal. And I want to quickly speak to the second question, just to make sure that the Court has arguments on that. The original judge in this case, Judge Richardson, gave cancellation to Mr. Pasquale, and in doing so, he weighed all of the factors that this Court requires and the board regulations and precedent requires. And one of those factors was Mr. Pasquale's community service. And that community service was rooted in the fact that Mr. Pasquale was the victim of a violent crime and then served as a witness for the prosecution and assisted the prosecution in the prosecution of its case. Now, later, when Judge Feldman looked at the issue, Judge Feldman did not take this into account. And the government argues that that's okay because the board looked at it and it's all been kind of erased. But we think that at least in a case like this, where two different immigration judges looked at essentially the same facts on positive equities, the board should be required to do more than just parrot what's required and make a conclusion, more than an Ipsy-Dixit should be required. And here, that's really all there was. But with the Court's ‑‑ And your time has expired. Yes. Thank you. Roberts, may I please the Court? Mr. O'Connor, on behalf of the Respondent. The petition for review here should be denied in part and dismissed as part. The petitioner has not established that the board erred in remanding the case back to the immigration judge for consideration of evidence that was relevant to discretionary determination on cancellation of removal. They haven't established that the board violated its scope of review regulations or that its remand was a violation of the due process clause. I think it's important, starting out, to kind of take a step back and look at the This is a cancellation of removal case. And the board, the immigration judge, were required to make a determination as to whether or not the petitioner merited this discretionary form of relief. That's a determination the IG and the board have to make. And so if we're looking at issues of waiver or forfeiture, the fact that DHS did not necessarily argue this particular, you know, the particular context of its remand motion, that it needed to reweigh the calculus. The fact that DHS doesn't raise that issue doesn't relieve the board or the IJ of their obligation to make that discretionary determination. Essentially, DHS can't weigh that issue that needs to be determined by the board and the immigration judge. And so, you know, the fact that DHS doesn't specifically say, okay, once you've remanded for consideration of whether these new crimes constitute an aggravated felony, also, in case you determine that they do not, remand it so we can reweigh this discretionary determination, that doesn't mean that the board can't look at that determination again. The IJ can't make that determination again. Let me understand if — I'm not sure I understand your argument. Your argument is the government can never waive the issue? My argument is that the IJ and the board are required to make that discretionary determination. Well, sure. And so — Let's say the DHS on remand said we waive it. I'm saying that if — Expressly said we waive any objection to cancellation. I apologize, Your Honor. I'm a little bit hard of hearing, so I — Well, let's suppose that you had — that the government, DHS on remand, had actually said affirmatively, we're not going to contest anything about the discretionary exercise of cancellation removal. We're only here for eligibility. In that circumstance, the IJ and the board are still required to make the discretionary determination. That's still something that has to be made for purposes of — in order to grant cancellation of removal. So when is it final in your judgment? Was that your honor? When is it final in your judgment? Can the board come back years later and say, you know, I think really we made a mistake 10 years ago. Let's reopen this thing. I think it's certainly where, in the context of this case, where administrative removal proceedings are still pending and where the determination, the original discretionary determination by the immigration judge granting a cancellation has not yet been adjudicated by the board, where that determination is still in agency proceedings, certainly it has not become final. Now, maybe after the board makes a final determination saying, yes, we grant you cancellation of removal, and then 10 years later, you know, new evidence comes in, perhaps at that point, you know, the board would be precluded from reopening the case. But certainly we're here, where administrative removal proceedings are still pending, and there has been no final order by the agency, the agency is still, you know, has the authority to relook at that, to look at that discretionary determination again. Well, let's assume for the sake of argument that the government had decided not to appeal the IJ's decision at all. That would be final, correct? If the board had not — or, I'm sorry, if DHS had not appealed the original immigration judge's decision, I think that would be a very different case, and So in that instance, would the BIA have the sua sponte power in your judgment to reopen? I think it would. I mean, it would be a little more Where do you get that authority? That's in 1003.2a. The board may at any time reopen a case. I mean, and this Court has recognized many times that the Court has the authority to reopen a case sua sponte. And I think that's also an important point here in terms of the board's authority. And the board But that's a slightly different provision than the one we're dealing with today. True. Well, I think the — I mean, the applicability of the regulation and the board's authority to reopen sua sponte essentially applies in the context of a motion to remand as well as a motion to reopen. So a motion to remand occurs, obviously, while the proceedings are still pending. A motion to reopen, obviously, is after it's concluded. But I think So if the only issue were the 5 years, for example, and that's both a factual and a legal issue, you know, did you have the 5 years and how do you count it up? And the IJ says cancellation of removal meets all the criteria. DHS says, no, that's not right because look at this evidence. I appealed to the BIA on that 5-year issue. So you're saying that at that point, for example, the BIA could remand and you could take into account all of the other factors on cancellation, even if the government had never raised those in a brief? I'm saying that the regulations do not necessarily constrain the board from doing so. So in other words, from the government's — it's always a jump ball with the government where anything goes once you get up to the BIA because nothing is waived and you don't have to put all your issues on the table. Is that the upshot of it? No. No, Your Honor. I think when we're talking about issues of statutory eligibility and relating to the elements, that where there is new evidence relating to the elements of the relief, to use sort of a counter example, oftentimes an alien becomes eligible for adjustment of status while their case is pending before the board. The alien can obviously apply to the — can seek adjustment or can ask the board to remand the case in order to — for the board to — or for the immigration judge to consider that new evidence, oh, I've become eligible for relief. I think in the same way here, where an alien becomes sort of ineligible for relief where there's new evidence that is — that undermines the, you know, original discretionary calculus, that in those circumstances it's appropriate for the board to remand the case to the immigration judge. Well, I think — I think the difference may be a little bit in terms of how the board exercises its power. I mean, for example, let's say a board member reads in the newspaper there's an account of something. He says, I think we'd better reopen this case because I read in the newspaper this is — and I think we're going to direct that cancellation not be awarded. You would say that certainly would raise due process concerns, wouldn't it? I would — I would be hard-pressed to argue that it didn't. Yes. Yes. So there's a due process — at least there are some contours of the exercise of the power you would concede are subject to due process. Yes. I think that this is not the case in which those due process, you know, issues come up. I mean, we have here a Petitioner who was convicted of various crimes while his case was on appeal. And these are crimes that are very relevant to the discretionary calculus. And, you know, where you have here that type of situation, again, I don't believe there's a due process issue in terms of the Board considering that evidence again. So you're distinguishing, then, between statutory elements that are basically required as a foundation to grant discretion and the ultimate power to grant discretion? And as I understand what you're saying is that the Board always has jurisdiction over this ultimate power of exercising discretion. I'm saying that the Board is not, you know, obligated to apply a waiver rule in the context of discretionary determinations. The Board still has to — the Board always has to make that determination, is discretion warranted or is it not? And a party may be able to waive some sort of aspect of the — of the discretionary issue, but ultimately the decision itself as to whether discretion is warranted has to be — I mean, the Board and the Judiciary have to make that determination eventually if the Petitioner is to be granted cancellation of removal. If I read back your argument to some of the people from the government who have argued before who said the Petitioner's waived all these issues, even in the discretionary context, I think the government counsel would find it surprising. I would not be surprised by the number of times we have argued waiver and exhaustion. And the — I would have to acknowledge that. But again, the issue in terms of the fundamental fairness of this, of this case, and whether or not DHS's actions sort of deprived the Petitioner of an opportunity to litigate this issue, really we're not dealing with the sort of fairness issues or the sort of, you know, inability to present certain arguments type situation which often applies in the waiver circumstance. Here, the Petitioner had a full opportunity to argue the discretionary calculus. The Petitioner had an opportunity to present evidence regarding those new convictions and to, you know, attempt to argue that they were — that they should not be, you know, bar him from cancellation of removal. Kennedy, to what extent is your argument based upon the BIA saying, when it finally gets to the discretionary determination, including the 2007 convictions, the BIA says, well, you know, our remand to the IJ before was not limited to the question of whether it was an aggravated felony. Are you relying on that reading by the BIA of its prior remand order? Yes. I think the — I think the question is, how important is that reliance, because I think that's nonsense, meaning, I read the remand order, there's not a word about it. Well, I think the question, though, and I think if you look at this Court's decision in Fernandez v. Holder, which is cited in our brief, in circumstances that are very similar, the board remanded for a certain purpose. But the fact that it remands for a certain purpose doesn't mean that the immigration judge is limited to that purpose on remand. And, I mean, the Court said, the IJ's jurisdiction on remand from the BIA is limited only when the BIA expressly retains jurisdiction and qualifies or limits the scope of its remand to a specific purpose. An articulated purpose for the remand without any express limit on scope is not sufficient to limit the remand such that it forecloses consideration of new claims. So putting the shoe on the other foot, putting the shoe on the other foot, then any time the BIA remands to an IJ, the Petitioner is entitled to put on whatever evidence he or she pleases. Well, again, the IJ has discretion to determine what, but, yes, I mean, the fact that the board remands for a specific purpose under board precedent does not mean that the IJ is expressly limited to only those purposes. Yes. Yes. That may, you know, my colleagues may have a problem with that in the future, but that is the ---- Yes, I would say. But that is what the board has said in matter of Patel. And, again, that is what this Court said in Fernandez v. Holder. I would like to just turn quickly to the language of the regulations. And this really is a question of whether or not the board violated its scope of review regulations. The relevant, the most relevant regulation, 1003.1d.1, so it states the board shall resolve the questions before it in a manner that is timely, impartial, and consistent with the acting regulations. That language certainly does not require that the only issues that the board can consider are those which have been presented by the parties. Questions before it can mean questions that were raised by the parties or questions that are simply relevant to the adjudication of the case. Indeed, the fact that the board has a waiver rule and can say, you know, hey, you've waived this claim, as well as the fact that the board will often sua sponte address issues that were not raised by the Petitioner, and the board will often do this in the context of, for example, withholding of removal, where the Petitioner doesn't make a specific argument. The board says, you know, even though they haven't raised an issue, we or the board will address withholding of removal sua sponte, essentially. And this Court has held that when a board does that, the board has effectively exhausted the issue on the alien's behalf. The board often does review issues which are not necessarily expressly raised by the authority to do that. And like I said, questions before it simply means questions that are either relevant or that parties have raised. So in terms of the plain language of the statute, I think this regulation certainly permits the board to address issues that are relevant, not just those that are raised by the parties. If there are no further comments or questions, I'd sit down on those comments. Roberts. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honor. Three quick points. First, the government's position, Justice Bouste here, about what the regulatory language means reads questions before it completely out of the regulation. There's absolutely no difference between what the regulation means with that language and without that language if what the government just said is right. And courts typically aren't in the business of reading text out of regulations or statutes. And there's really no justification for doing so here, especially given that the government concedes that the hypotheticals that Your Honor posed would raise due process problems. The government concedes that if the board decided to address some question for a random reason that was never before it, there would be a due process problem. So if the text doesn't clearly support Mr. Pasquale, it's at best ambiguous and at least implicates due process problems of the highest order, and this Court should adopt an interpretation that avoids those issues. Third, the government is wrong when it at least suggests that the board needs to act for a cancellation order to become effective. Under the board's own regulations, 1003.39 to be exact, if the board, if the government doesn't appeal an issue to the board or there are some other circumstances under which this would be true, the IJ ruling becomes effective. So the IJ could pass on an issue. The government could never put it before the board, and it would become final and effective. And maybe the board could reopen or remand that one day under this alternative regulation, but it's not at all clear that that would apply in a case like this because it would need reasons to do so, and there were none here. I skim over my time, and unless the Court has any more questions. Roberts. Thank you, counsel. Thank you, Your Honor. The case that's heard will be submitted for decision. Thank you both for your arguments.
judges: Thomas, McKeown, Fletcher